UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM M. FOSTER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:11-CV-17 |
| § | |
| SANDERSON FARMS, INC., *et al*, § | |
| § | |
| Defendants. § | |

**OPINION AND ORDER**

Pending before the Court are motions for summary judgment by Sanderson Farms, Inc., and Eric Erickson ("Defendants") against the claim of retaliatory discharge under the Family and Medical Leave Act[1] made by Clarence Scott Keen[2] ("Plaintiff"). Docs. 29, 30. Plaintiff filed a response (Doc. 38) and Defendant Sanderson Farms filed a reply (Doc. 44). Having considered the Parties' arguments, the facts of the case, and the applicable law, the Court concludes that the motions should be granted.

I. Background

From 2002 until his termination on December 5, 2008, Plaintiff Keen worked for Defendant Sanderson Farms as the maintenance manager of its poultry processing plant at the Bryan, Texas, processing division. Keen Decl. ¶¶ 1-2, Doc. 38-1. During that entire period, he reported directly to Defendant Erickson, his supervisor and the division manager. Keen Decl. ¶ 1; Keen Dep. 24:22-25:10, Docs. 43 to 43-2.

In July 2008, Keen informed Erickson that he would need cervical spine surgery and took a medical leave of absence for that surgery, which took place on July 29. Keen Decl. ¶ 3; Keen

---

[1] Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654 (2012).
[2] Substituted by bankruptcy trustee William M. Foster. Order, Jan. 31, 2012, Doc. 25.

Dep. 64:19-23. The company's standard thirteen-week leave period, one week longer than that mandated by the FMLA, began on July 28 and expired on October 28. Morgan Dep. 29:13-30:10, 40:11-41:6, Docs. 29-3, 40. Sanderson Farms later extended that expiration date to November 28, totaling eighteen workweeks. Letter from Erickson to Keen (Nov. 6, 2008), Doc. 29-1 Ex. 9.

Beginning just one week after surgery and continuing until the end of his medical leave, Keen repeatedly requested to return to work but was denied by Erickson until a full medical release was obtained. On August 5, 2008, Keen spoke with Erickson via telephone and informed Erickson of his desire to return to work; on August 18, after an appointment with his physician, he spoke with Erickson by phone again to say that he was undergoing physical therapy but had a limited release from his physician to return to work and wanted to do so. Keen Decl. ¶¶ 4, 6; Keen Dep. 73:2-14. Erickson denied these requests. Erickson Dep. 130:15-132:6, Docs. 29-2, 42-2. According to Erickson, the prerequisite for a return to work was a "complete release" from Keen's doctor stating that Keen could "perform all of his duties and responsibilities." Erickson Dep. 130:15-131:9. In Keen's words, Erickson required "a 100% written release from a physician, in which the physician would accept full responsibility for any post-surgery related injury [Keen] suffered after returning to work." Keen Decl. ¶ 6. Keen was unable to provide such a release but continued to communicate his readiness and desire to return to work, including during a September 26, 2008, phone call with Erickson, in which he explained that he was attending physical therapy three days per week but would schedule his appointments to minimize interference with work. Keen. Decl. ¶¶ 7-8. Erickson, however, maintained his earlier prerequisite for a return to duty. Keen. Decl. ¶ 8.

Keen had a related discourse with the division's human resources department. According

to Keen, on several occasions beginning in October, 2008, he spoke with Rebecca Morgan, a Sanderson Farms human resources manager, to discuss his recovery from surgery and his desire to return to work. Keen Decl. ¶¶ 9, 11, 12. Morgan agrees that such conversations took place but does not believe that Keen told her of his desire to return to work until November. Morgan Dep. 55:8-56:13. She does, however, confirm that in response to Keen's inquiry, she told him that other employees on medical leave had been allowed to return to work on a limited basis without a 100% medical release but did not know why Keen was not allowed to do the same. Keen Decl. ¶¶ 9, 11, 12; Morgan Dep. 60:4-17.

  Despite Keen's expressions of desire to return to work, he did not provide a full medical release until November 24, 2008. On September 3, Keen wrote that his right leg, arm and hand were "still not functioning normally and at times [he was] still having a significant amount of pain." E-mail from Keen to Erickson (Sept. 3, 2008, 03:35 CST), Doc. 29-1 Ex. 4. As late as October 16, Keen's physician certified that he was physically "unable to perform work of any kind." DOL Form WH-380, Certification of Health Care Provider, Ibrahim El Nihum, M.D. (Oct. 16, 2008), Doc. 29-1 Ex.8. Erickson continued to tell Keen that he could not return to work for his own safety and well-being. Erickson Dep. 182:13-23; Letter from Keen to Erickson (Nov. 14, 2008), Doc. 29-1 Ex. 10. On November 19, Keen delivered to Morgan a physician's letter stating that "[h]e is still at this present time being treated," "is currently attending physical therapy," and "will return to work full time and will return doing his normal requirements," but not specifying a return date. Keen Decl. ¶ 15; Letter from Ibrahim El Nihum, M.D., Coll. Station Neurosurgery (Nov. 17, 2008), Doc. 29-1 Ex. 12. Morgan spoke with Erickson and relayed a message to Keen that he could not immediately return to work but would be notified when he could. Keen Decl. ¶ 15. On November 24, Keen had another appointment with his physician;

after that appointment, he phoned Erickson to say that he had obtained the necessary paperwork. Keen Dep. 91:16-92:2. Consequently, Erickson allowed Keen to return to work the following day, November 25, 2008. Keen Decl. ¶ 16; Keen Dep. 92:3-6.

Also on November 24, Erickson was made aware of photos posted on the internet of a hunting trip Keen had taken on November 9. Erickson Dep. 228:18-229:13. Then, on December 2, Erickson received paperwork from the physician's office (via Morgan) stating that Keen had been authorized to return to work on November 3. Erickson Dep. 199:15-200:16. Later on December 2, Keen was called into a meeting in Erickson's office with Erickson and Charles Noble, the processing manager for Sanderson Farms, and was told that there was a problem with his FMLA paperwork, specifically that it said he had been released to return to work as early as November 3. Keen Decl. ¶ 17; Erickson Dep. 205:9-14; Noble Dep. 57:6-18, Doc. 29-4. Keen answered that the date was erroneous. Keen Decl. ¶ 17. Noble then raised the issue of Keen's hunting trip, which he had taken after the expiration of his statutory FMLA leave and while he continued to receive regular pay on extended company medical leave. Keen Decl. ¶ 17; Keen Dep. 98:12-104-3; Erickson Dep. 240:21-241:6; Noble Dep. 57:22-59:20; Morgan Dep. 69:19-23. According to Erickson and Noble, Keen was nonresponsive and did not admit going on the hunting trip until they showed him photographs of the trip as proof, Erickson Dep. 242:6-22; Noble Dep. 57:22-59:2. According to Keen, however, he was not evasive and did not deny that he had gone hunting, Keen Decl. ¶ 17.

After the meeting Keen went to his physician's office to obtain another copy of the medical release with corrected information. Keen Decl. ¶ 18. On December 3, Keen delivered that document to Erickson with a new release date of November 24, explaining that the original entry of November 3 was a "clinical release" date, not a date for returning to work. Keen Decl. ¶

18. Erickson contacted the physician's office independently, and a medical assistant told him that the November 3 date on the paperwork was indeed a mistake—that it was not a release date at all. Erickson Dep. 239:3-8. Erickson also asked the medical assistant if Keen had, however, been authorized to participate in deer hunting; she replied, "That's a good question. I don't know." Erickson Dep. 201:20-202-15.

On December 5, Keen was called into a meeting with Erickson and Morgan, and Erickson told him that it would be his last day because he had failed to comply with the conditions of FMLA leave. Keen Decl. ¶ 19. The decision to terminate Keen was made by Erickson, in consultation with the Sanderson Farms corporate office through the division's human resources department. Erickson Dep. 9:4-14.

On November 24, 2010, Plaintiff commenced a civil action against Defendants in Texas state court, and on January 4, 2011, Defendants removed the action to this Court. Notice of Removal, Doc. 1.

<u>II. Legal Standard</u>

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.

The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view

the evidence and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact, *Anderson*, 477 U.S. at 248-49, but that evidence need not be in a form that would be admissible at trial, *Celotex*, 477 U.S. at 324.

### III. Analysis

"[W]hen direct evidence of discrimination is lacking, the *McDonnell Douglas* organizational framework applies to claims that an employee was penalized for exercising rights guaranteed by the FMLA." *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). This framework involves a three-step burden-shifting scheme. *Id.* In cases alleging discharge in retaliation for taking FMLA leave, the first step requires the plaintiff to establish a prima facie case by showing (a) his leave was protected by the FMLA; (b) the employer discharged him; and (c) the employer's decision was made because he took FMLA leave. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) (citing *Chaffin*, 179 F.3d at 319). If the plaintiff satisfies these requirements, the second step shifts the burden to the employer to articulate a legitimate non-retaliatory reason for the plaintiff's termination. *Chaffin*, 179 F.3d at 319. If the employer meets its burden of production, the third step requires the plaintiff to "show by a preponderance of the evidence" that the employer's proffered explanation is merely pretext for its true reason: retaliation. *Hunt*, 277

F.3d at 768 (citing *Chaffin*, 179 F.3d at 319). To satisfy the third step at the summary judgment stage, the plaintiff need only produce evidence creating an issue of fact regarding either the employer's retaliatory animus or the falsity of the employer's non-retaliatory explanation. *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

Defendants assume for the purposes of summary judgment that Plaintiff satisfies the requirements of the first step under *McDonnell Douglas* and establishes a prima facie case: (a) he took FMLA leave due to a serious health condition; (b) Defendants terminated his employment; and (c) his termination occurred shortly after his FMLA leave. Mot. 15; *see also Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (concluding that temporal proximity of protected action and adverse employment decision is sufficient to establish causation element of prima facie case). The burden then shifts to Defendants to articulate a legitimate non-retaliatory reason for this termination.

Defendants state their reason as a loss of confidence in Plaintiff. Mot. 16. The circumstances Defendants cite for this loss of confidence include the conflicting medical releases that Plaintiff presented, the hunting trip he took while still on paid medical leave, and Erickson's perception that Keen was not honest or forthcoming about his hunting trip. Mot. 16. It is axiomatic that supervisors expect honesty and candor from their subordinates, and a lack of such qualities provides legitimate justification for an adverse employment action. *See Wilson v. Noble Drilling Servs., Inc.*, 405 F. App'x 909, 914 (5th Cir. 2010) (recognizing "loss of confidence" as a legitimate nondiscriminatory reason for termination); *see also* Robert E. Kelley, *In Praise of Followers*, Harv. Bus. Rev., Nov.-Dec. 1988 (stating that essential qualities of an effective subordinate include honesty, credibility, and candor with one's supervisors). Therefore, the Court finds that Defendants have satisfied their burden of production under step two.

Under step three, the burden shifts back to Plaintiff to create a genuine issue of material fact whether Defendants' explanation is mere pretext. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully engaged in retaliation." *McArdle v. Dell Products, L.P.*, 293 F. App'x 331, 339 (5th Cir. 2008) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). Thus, the crucial question is whether Plaintiff has presented sufficient evidence to create a jury issue regarding the falsity of Defendants' explanation. The Court finds that he has not.

In reaching this conclusion, the Court begins by examining the evidentiary requirement for the permissive inference quoted above—"sufficient evidence to find that the employer's asserted justification is false"—and determining what "sufficient" means (and does not mean) in this context. In essence, Plaintiff must show that Defendants' termination decision was not rationally justified by the facts as they believed them to be. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (finding that employer's belief "does not have to be proven to be correct in order for [it] to be a legitimate, non-discriminatory reason . . . so long as the belief is reasonable, not arbitrary"); *see also Woodson v. Scott & White Mem'l Hosp.*, 255 F. App'x 17, 20 (5th Cir. 2007) (quoting *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995)) ("In a retaliation case, 'even an incorrect belief . . . constitutes a legitimate, nondiscriminatory reason for making an employment decision.'"). On the other hand, it is insufficient only to adduce evidence that Defendants were merely wrong.

Next the Court applies this standard to the facts cited by Defendants as justifying their termination decision. As stated above, Defendants list three reasons for their loss of confidence in Plaintiff: (1) the conflicting medical releases; (2) his hunting trip; and (3) his reticence with

regard to the hunting trip. Each is examined in turn.

First, Defendants cite their receipt of three conflicting medical releases. Mot. 4. One document, dated November 17, 2008, states that Plaintiff "is still at this present time being treated" and "attending physical therapy" but "will return to work full time and will return doing his normal requirements as described in his position description." Letter from El Nihum (Nov. 17, 2008). The second document, dated December 2, 2008, lists Plaintiff's "return to regular duty (no restrictions)" date as November 3. Erickson Dep. 199:15-200:7; Fax from Kristy, Med. Assistant, Coll. Station Neurosurgery, to Sanderson Farms (Dec. 2, 2008), Doc. 29-1 Ex. 13. The third, dated December 3, 2008, lists Plaintiff's "return to regular duty (no restrictions)" date as November 24. Form from Kristy, Med. Assistant, Coll. Station Neurosurgery (Dec. 3, 2008), Doc. 29-1 Ex. 18. Plaintiff does not deny these discrepancies but argues that they do not provide a rational justification for Defendants' loss of confidence because the discrepancies were accounted for: the medical assistant who filled out the second and third documents said that she had made a mistake. Pl.'s Resp. 11 (citing Erickson Dep. 239:3-8). But the difference between not having conflicting paperwork and having conflicting paperwork with an explanation is that the latter requires acceptance and belief of the explanation to negate any suspicion that has been aroused. Clearly, Defendants were not satisfied with the explanation they received, and such dissatisfaction is better understood when the conflicting paperwork is viewed in the proper context.

That context is provided by the second reason cited by Defendants: Plaintiff's deer hunting trip on November 9 while still on paid medical leave and before providing a medical release. Mot. 4. Of course, what multiplies the significance of this trip is that it was not learned of through communications from Plaintiff but rather discovered through photos posted on the

internet. E-mail from Merinda Thompson to George Jones Sr. (Nov. 19, 2008, 02:43 PM), Doc. 29-1 Ex. 14; E-mail from Thompson to Jones Sr. (Nov. 19, 2008, 02:33 PM), Doc. 29-1 Ex. 15; Erickson Dep. 206:19-211:10. At the time that the emails containing the photos were exchanged at Defendants' corporate headquarters, the most recent medical paperwork that Plaintiff had provided stated that he was physically "unable to perform work of any kind." DOL Form WH-380, Certification of Health Care Provider, El Nihum (Oct. 16, 2008). By the time Erickson received the photos, Erickson Dep. 228:18-229:12, the three most recent medical updates he had received were (1) the October 16 form stating that Keen was unable to perform any work, (2) the November 17 letter stating that he was still undergoing treatment but would be able to return to duty at an unspecified date, and (3) the November 24 phone call from Keen saying that he had just obtained a medical release from his physician. Given this sequence of events, it is hardly surprising that news of Plaintiff's November 9 hunting trip aroused in Defendants a sense of suspicion and distrust.

And this, in turn, led to the third reason offered by Defendants: Plaintiff's behavior during the meeting in which they confronted him about the hunting trip. Defendants' claim is that initially Plaintiff was not "honest or forthcoming" when asked about his trip. Mot. 4. Plaintiff remembers the conversation differently, recalling that he was neither dishonest nor evasive. *See* Keen Dep. 93:21-94:5. Though the specific facts of this conversation are disputed—and therefore inappropriate for support of a motion summary for judgment—two related facts are not. Indeed, these two facts are confirmed by either version of the events: first, it is clear that Plaintiff did not inform Defendants of the hunting trip prior to this conversation; second, Defendants came to know of the trip only through discovering photographs posted online. These undisputed facts are material because of their natural consequence: Defendants' loss of

confidence in Plaintiff before the conversation even began (and, therefore, their lack of faith in his explanations, which renders the factual details of the conversation relatively unimportant). Perhaps Defendants were too quick to judge Plaintiff; perhaps Plaintiff could have prevented this by informing Defendants of his plans prior to taking the trip. But as unfortunate as this circumstance may be, it is not the role of the Court to determine whether Defendants or Plaintiff could have better handled the situation—it is only to determine whether Defendants' decision had a rational justification.

Moreover, examination of the justifications articulated by Defendants requires not a narrow view of those specific facts in isolation but a broad view of the circumstances as a whole:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Reeves*, 530 U.S. at 148-49. In this case, Plaintiff's prima facie case is based on the temporal proximity of his termination to his taking of FMLA leave, and the only additional proof he offers is that of allegedly disparate treatment.

Regarding the latter, Plaintiff points out that he was not permitted to return to work on a limited basis while conducting physical therapy, while other employees on medical leave were. Pl.'s Resp. 18. But this evidence is relevant only to the extent that it is probative to the issue of retaliation. As Plaintiff's evidence shows, however, the difference in treatment was between him and other employees who had also exercised rights under the FMLA (and apparently enjoyed those rights without discrimination or retaliation)—not between him and similarly situated employees who had *not* exercised such rights. Keen Dep. 82:18-83:12. This evidence of "disparate" treatment simply is not probative to the issue of retaliation.

Regarding the former, it must be noted that the FMLA mandates only twelve weeks of medical leave per year; it does not require holding an employee's job open for longer periods. 29 U.S.C. § 2612. Allowing leave extensions and holding an employee's job open pending his return is within the discretion of the employer, as is *not* extending his leave and holding his job open. In this case, the record shows that Defendants terminated Plaintiff not for his taking FMLA leave, which had a statutory expiration date of October 19, 2008, but for circumstances that arose after that date. Furthermore, "although the timing of the decision can establish a prima facie case of retaliation and is a factor in considering pretext, alone it is insufficient to demonstrate pretext. Ultimately, [Plaintiff] must demonstrate that, but for filing for FMLA leave, [he] would not have been terminated." *Harris v. Dallas Indep. Sch. Dist.*, 435 F. App'x 389, 93 (5th Cir. 2011) (citing *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)).

It is clear, when viewing the totality of the circumstances, that Defendants lost confidence in Plaintiff upon discovering news of his hunting trip and receiving medical documents with conflicting information. This loss of confidence is entirely reasonable. Whether Defendants were correct is another matter, but the issue before the Court is not one of correctness—it is of retaliatory animus. As long as Defendants' conclusions are undergirded by a rational justification, as a matter of law it cannot be proved that they were animated by a retaliatory motive. Defendants have offered just such a rational justification, and there is insufficient evidence in the record to rebut it. "[I]n indirect discrimination cases, we do not defer to [juries] where the credibility of a defendant's explanation of the discharge is at issue simply because juries have the exclusive right to judge credibility." *Sandstad*, 309 F.3d at 898 (quoting *Futrell v. J.I. Case,* 38 F.3d 342 (7th Cir. 1994) ("If the evidence does not amply support a plaintiff's claim that the defendant's explanation is unworthy of credence, judgment as a matter

of law is entirely appropriate.")).

> If [the employee] intends to show that the explanation is so unreasonable that it must be pretextual, it is [the employee's] burden to proffer evidence creating a fact issue regarding reasonableness. . . . The issue at the pretext stage is whether [the employer's] reason, *even if incorrect*, was the real reason for [the employee's] termination.

*Id.* at 899 (emphasis added). At most, Plaintiff has created a fact issue regarding the correctness of Defendants' decision, but not its reasonableness. Therefore, no genuine issue of material fact exists.

### IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendants' Motions for Summary Judgment are **GRANTED** and Plaintiff's Complaint is **DISMISSED**.

SIGNED at Houston, Texas, this 16th day of January, 2013.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE